IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| JOSEPH KLAKULAK | ) | |
| | ) | |
| AMI JACKSON | ) | |
| | ) | |
| On Behalf of Themselves and | ) | Civil Action No.: 11-cv-00388-MOC-DSC |
| Others Similarly Situated, | ) | |
| | ) | |
| Plaintiffs, | ) | **PLAINTIFFS' BRIEF IN SUPPORT** |
| | ) | **OF PLAINTIFFS' MOTION FOR** |
| v. | ) | **CONDITIONAL CLASS** |
| | ) | **CERTIFICATION UNDER FLSA** |
| AMERICAHOMEKEY, INC. | ) | **§ 216(b)** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiffs, on behalf of themselves and all others similarly situated, set forth the following brief in Support of *Plaintiffs' Motion for Conditional Class Certification under FLSA § 216(b)*.

## INTRODUCTION

Under the lenient first tier conditional certification standard this Court and others around the country apply, Plaintiffs meet their burden of showing that they and the collective class of AHKI Loan Officers that they seek to represent are "similarly situated." As set forth below, AHKI's Loan Officers are similarly situated because (1) AHKI uniformly classified Loan Officers as "exempt" from overtime and minimum wage compensation, (2) Loan Officers performed the same job duties, (3) AHKI paid them in the same manner, and (4) they commonly worked unpaid overtime hours without proper overtime and/or minimum wage pay. Promptly sending judicial notice in this case will advance the goals of the FLSA's collective action mechanism by avoiding multiple lawsuits, and ensuring that all potential class members receive notice of their claims and have the opportunity to join this case and stop the running of the

statute of limitations. Accordingly, this Court should grant Plaintiffs' motion for conditional certification under FLSA § 216(b), and authorize judicial notice of this action to all Loan Officers, Mortgage Bankers, Originators, Representatives, Account Executives and other like titles (collectively as "Loan Officers") who AHKI employs or did employ at any time from three years prior to the date of issuance of notice and continuing to the present.

As this Court is aware, there is a low threshold for conditional certification under FLSA § 216(b) collective action claims. As the first stage of the certification process, this Court makes an initial "notice stage" determination whether plaintiffs are "similarly situated." This requires nothing more than a *modest factual showing* that the putative class members were together the victims of a single decision, policy or plan. The two Named Plaintiffs, as well as three (3) opt-in Plaintiffs, from different AHKI offices in different states have brought forth substantial sworn allegations to meet this standard and which support the allegations set forth in the First Amended Complaint. Moreover, AHKI's own written Loan Origination Module policy document confirms that these Loan Officers are "similarly situated" because the Module establishes that (1) AHKI pays all Loan Officers the same, on a commission only basis (2) Loan Officers have the same job duties, and (3) Loan Officers are subject to the same policies and standards. As such, this Court should conditionally certify and order notice be sent to the class.

## HISTORY OF PLEADINGS

On August 9, 2011, Plaintiff Joseph Klakulak filed his Complaint which alleges FLSA overtime violations against AHKI. On September 22, 2011, AHKI answered the Complaint. On September 28, 2011, Plaintiffs filed their First Amended Complaint to add FLSA minimum wage and Rule 23 North Carolina state wage and hour claims against AHKI.

No discovery has occurred; neither party has made Rule 26 Initial Disclosures. At the time of filing this Motion, five (5) former Loan Officers, including named Plaintiffs, who worked in two (2) different states have filed *Consent to Join* forms with the Court.

## **STATEMENT OF FACTS**

Plaintiffs set forth the following which easily shows that Loan Officers are "similarly situated" and thus satisfies the lenient standard required for conditional certification:[1]

### **Background Information**

1. On August 9, 2011, Plaintiff Joseph Klakulak, a former AHKI loan officer, filed his Complaint against AHKI. On September 28, 2011, Plaintiff filed his First Amended Complaint to add Ami Jackson as a party, and FLSA minimum wage and North Carolina state wage and hour claims. In their First Amended Complaint, Plaintiffs allege that AHKI violated the FLSA by classifying Loan Officers as exempt, and failing to properly pay them minimum wage and/or overtime compensation. (Dk. #15, First Amended Complaint, ¶¶ 4, 31, 32-38, 48-67).

2. Since Plaintiff Klakulak filed this lawsuit, four (4) Loan Officers have joined this matter by filing consents. These opt-ins have worked for AHKI in the states of North Carolina and Georgia. Plaintiff Klakulak worked for AHKI in North Carolina. Thus, Loan Officers in two (2) states have already joined this lawsuit prior to this Court issuing any notice. (Ex. 1 Joseph Klakulak Sworn Statement, ¶ 2; Ex. 2 Ami Jackson Sworn Statement, ¶ 2; Ex. 3 Vance Chandler Sworn Statement, ¶ 2; Ex. 4 Vance McGhee Sworn Statement, ¶ 2; Ex. 5 Baxter Barber Sworn Statement, ¶ 2).

---

[1] Unlike a dispositive motion, there is no requirement that these facts be uncontroverted. The facts alleged by Plaintiffs in their First Amended Complaint and sworn statements should be accepted as true when ruling on a Motion for Conditional Certification. (*See infra*).

## AHKI

3. Defendant AHKI is a home lender that has or had branch office locations in several states including North Carolina. (Dk. #15, First Amended Complaint, ¶ 1; Dk. #13, AHKI Answer, ¶ 1).

4. AHKI employs more than 200 Loan Officers at these branch offices and other locations in addition to other employees. (Ex. 1-5 Loan Officer Sworn Statements, ¶ 2; Dk. #13, AHKI Answer, ¶ 17).

5. AHKI formally refers to its Loan Officers as "Mortgage Banker, Loan Officer." AHKI also refers to this position as "Originator, Representative, or Account Executive." (Ex. 6, AHKI Loan Originator Module, pp. 1-2).

6. Plaintiffs allege in their First Amended Complaint that AHKI fails to properly pay minimum wage and overtime compensation under its pay policy. Plaintiffs bring this allegation on behalf of all AHKI "Loan Officers" as a collective action in that they were affected by the same illegal pay policy. (Dk. #15, First Amended Complaint, ¶¶ 4, 32; Ex. 1-5, Loan Officer Sworn Statements ¶¶ 3-4).

7. AHKI classified Loan Officers as exempt employees who are not entitled to receive minimum wage or overtime pay. (Dk. #15, First Amended Complaint, ¶¶ 32-33, 112; Ex.1-5, Loan Officer Sworn Statements ¶ 3; Ex. 6, AHKI Loan Originator Module, p. 3).

8. AHKI paid its Loan Officers commissions only: "Loan Originator compensation is strictly commission based." AHKI did not pay Loan Officers minimum wage or overtime. (Ex. 6, AHKI Loan Originator Module, p. 3).

9. Plaintiffs allege and testify, and AHKI compensation documents establish that AHKI implemented the same basic commission only compensation plan and applied it to all of

its exempt designated Loan Officers working at all of its locations. (Dk. #15, First Amended Complaint, ¶¶ 16-17; Ex. 1-5, Loan Officer Sworn Statements ¶ 5-6; Ex. 6, AHKI Loan Originator Module, p. 3).

10. Plaintiffs allege and testify that AHKI's compensation plan paid exempt designated Loan Officers commissions based upon their mortgage sales and did not always pay such Loan Officers minimum wage. (Dk. #15, First Amended Complaint, ¶¶ 64-65; Ex. 1-5, Loan Officer Sworn Statements ¶ 7).

11. Several Loan Officers testify that AHKI did not pay them any compensation during certain pay periods during her employment there as a Loan Officer. (Ex. 2, Ami Jackson Sworn Statement, ¶ 7; Ex. 3, Vernon Chandler Sworn Statement, ¶ 7; Ex. 4, Vance McGhee Sworn Statement, ¶ 7; Ex. 5, Baxter Barber Sworn Statement, ¶ 7).

12. Plaintiffs testify that they routinely worked in excess of 40 hours per week as Loan Officers. (Ex. 1-5, Loan Officer Sworn Statements ¶ 4).

### **AHKI Loan Officer Job Duties**

13. AHKI Loan Officers all performed the same essential job functions. (Ex. 1-5, Loan Officer Sworn Statements ¶¶ 8-12; Ex. 6, AHKI Loan Originator Module, pp. 2-3).

14. AHKI Loan Officers contacted potential borrowers/customers regarding mortgage products. The jobs of AHKI Loan Officers involved AHKI wanting them to sell mortgage products to the potential borrower/customer when they were speaking with them in person or over the telephone. The primary duty of Loan Officers was to sell mortgage products. The duties that a Loan Officer customarily and regularly performed in this position included the following:

a. Speaking with potential borrowers/customers in person and over the telephone regarding mortgage products.

b. Their goal as a Loan Officer was to find a mortgage product available and sell that product to qualified borrowers/customers. Their job performance and compensation was based upon their ability to generate loan sales. The vast majority of their time at work was spent attempting to generate these sales for the qualified borrowers/customers.

c. Loan Officers would take credit applications by having potential borrowers/customers provide them with basic financial information that would allow the Loan Officers to pull credit information on the borrowers/customers from a standardized system on the computer.

d. Loan Officers would tell the borrowers/customers what products were available and provide them with basic information regarding mortgage products such as applicable fees and interest rates. Information on these products was provided to Loan Officers via AHKI and its software, an on-line pricing engine, or other set information.

e. Loan Officers would allow the borrowers/customers to select the mortgage products that met their needs and assist them with any questions they may have regarding their decision.

f. Loan Officers would then collect all necessary paperwork from the borrowers/customers in order for AHKI to process the mortgage product that they selected in order to sell the loan product. Loan Officers collected the paperwork set forth on internal guidelines. After all of the financial paperwork was gathered

    from the borrowers/customers regarding their applications, and it was determined that they were pre-qualified by pre-set criteria, the package of paperwork would be provided to AHKI's underwriters for review and approval. The underwriters determined whether the borrower's/customer's mortgage application would be accepted.

  g. Loan Officers did not review borrower's/customer's financial information with them in order to provide any financial advice or counseling with regard to their personal financial situation or their financial decisions. They reviewed the financial paperwork they provided to them to ensure that everything on the required list was received and to make sure it matched the initial information that they provided to the Loan Officers. This was being done in order to sell the loan product. Loan Officers never provided any financial advice or consultation to the borrowers/customers on whether they should undertake any debt given their financial situation. If they qualified and wanted the mortgage product, Loan Officers would proceed with their request. (Ex. 1-5, Loan Officer Sworn Statements ¶ 11).

15. Federal and lending institution guidelines governed the majority of the duties Loan Officers performed. (Ex. 1-5, Loan Officer Sworn Statements ¶ 9; Ex. 6, AHKI Loan Originator Module, pp. 7-127).

16. Loan Officers did not perform any work for AHKI in such areas as tax advice; guidance, recommendation or consulting; financial advice, guidance recommendation or consulting for AHKI; accounting advice, guidance, recommendation or consulting for AHKI; budgeting advice, guidance, recommendation or consulting for AHKI; auditing advice;

guidance, recommendation or consulting for AHKI; insurance advice, guidance, recommendation or consulting for AHKI; quality control advice, guidance, recommendation or consulting for AHKI; purchasing advice, guidance, recommendation or consulting for AHKI; procurement advice, guidance, recommendation or consulting for AHKI; advertising advice, guidance, recommendation or consulting for AHKI; marketing advice, guidance, recommendation or consulting for AHKI; research advice, guidance, recommendation or consulting for AHKI; safety and health advice, guidance, recommendation or consulting for AHKI; personnel management advice, guidance, recommendation or consulting for AHKI; human resources advice, guidance, recommendation or consulting for AHKI; employee benefits advice, guidance, recommendation or consulting for AHKI; labor relations advice, guidance, recommendation or consulting for AHKI; public relations, government relations advice, guidance, recommendation or consulting for AHKI; computer network, internet and database administration advice, guidance, recommendation or consulting for AHKI; or legal and regulatory compliance advice, guidance, recommendation or consulting for AHKI. (Ex. A-E, Loan Officer Sworn Statements, ¶ 10).

17. Loan Officers never supervised more than one employee working for AHKI. Loan Officers never worked as a team-leader over any employees on any AHKI projects. (Ex. 1-5, Loan Officer Sworn Statements ¶ 11; Dk. #13, AHKI Answer, ¶ 22).

18. Plaintiff Loan Officers testify that the duties and responsibilities related above in paragraphs 15-17 applied to all AHKI Loan Officers. (Ex. 1-5, Loan Officer Sworn Statements ¶ 12).

19. AHKI written policy prohibits Loan Officers from meeting borrowers/customers in their homes. "Never schedule appointments for someone's residence." (Ex. 6, AHKI Loan Originator Module, p. 3).

**ARGUMENT**

Plaintiffs meet the lenient requirements for conditional certification so this Court should order notice be issued to the Loan Officer class. Indeed, Plaintiffs more than present a "modest" factual showing which demonstrates that Loan Officers are similarly situated and victims of the respective pay policy at issue. For these reasons, this Court should grant conditional class certification and approve the notice to class members attached as Exhibits 7-8.

**A. Plaintiffs Meet the Lenient Standard of Review for FLSA First Stage Certification.**

FLSA Section 216(b) permits a plaintiff to file a collective action, on behalf of himself and other employees similarly situated, to recover unpaid minimum and overtime wages, and liquidated damages from employers who violate FLSA Section 7. 29 U.S.C. § 216(b); *Clark v. Wells Fargo Fin., Inc.*, 2008 WL 4787444, at *3-4 (M.D.N.C. Oct. 30, 2008).

As the Supreme Court has explained, the FLSA's collective action mechanism serves the dual purpose of lowering litigation costs for individual plaintiffs, and decreasing the burden on the courts through "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). "These benefits . . . depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* Thus, the district court "has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Id.* at 170-71.

1. <u>Courts Apply A Two Step Process To FLSA Certification</u>.

There are two requirements for the certification of an FLSA collective action. First, the members of the proposed class must be "similarly situated." *Romero v. Mountaire Farms, Inc.*, 7:09-CV-190-BO, 2011 WL 2358506, *2 (E.D.N.C. June 9, 2011)(*citing* 29 U.S.C. § 216(b)); *see also De Luna–Guerrero v. N.C. Grower's Ass'n, Inc.,* 338 F.Supp.2d 649, 654 (E.D.N.C.2004). Second, the class members must "opt-in" by filing their consent to suit. *Id.*

Neither the FLSA nor the Fourth Circuit has set forth criteria for determining whether employees are "similarly situated" for purposes of conditional certification; however, district courts within the Fourth Circuit and around the country have settled on a two-step process. *See, e.g., Romero*, 2011 WL 2358606 at *2; *Williams v. XE Services, LLC*, 2011 WL 52353 (E.D.N.C. Jan. 4, 2011); *Clark*, 2008 WL 4787444, at *4; *Anderson v. Cagle's Inc.*, 488 F.3d 945, 951-54 (11th Cir. 2007); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001); *Jirak v. Abbott Labs., Inc.*, 566 F.Supp.2d 845, 847 (N.D.Ill. 2008) (collecting cases that have adopted the two-step approach).

"First, the court determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Williams*, 2011 WL 52353, at *2 (quoting *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010)). "If they are, notice is sent and new plaintiffs are permitted to 'opt in' to the lawsuit" *Id.* "Second, after discovery is largely complete and more information on the case is available, the court makes a final determination of whether all plaintiffs are sufficiently similarly situated to proceed together in a single action." *Id.*

2.  The First Step "Similarly Situated" Determination Is A Lenient Standard That Typically Results In Conditional Certification.

In the first step of the process, the court makes an initial determination, based solely on the pleadings and any affidavits submitted by the parties, whether the plaintiffs in the proposed collective action are "similarly situated." *Ceras-Campo v. WF P'ship*, 2011 WL 588417 (E.D.N.C. Feb. 9, 2011) (the first-step determination of whether notice should be given to potential class members is lenient and based "solely on the pleadings and any affidavits that have been submitted") (citing *Cameron-Grant v. Maxim Health Care Servs., Inc.*, 347 F.3d 1240, 1243 (11th Cir. 2003)); *Clark*, 2008 WL 4787444, at *4 (citing *Stanfield v. First NLC Fin. Servs., LLC*, 2006 WL 3190527, at *2 (N.D. Cal. Nov. 1, 2006)).

This first determination is made at the so-called "notice stage," and the standard is lenient. *Id.*; *see also Howard v. Securitas Security Services, USA Inc.*, 2009 WL 140126, at *5 (N.D. Ill. Jan. 20, 2009) ("[T]he court looks for no more than a 'minimal showing' of similarity."). "Plaintiffs do not have to show that the potential class members have identical positions for conditional certification to be granted; plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay." *Jirak*, 566 F.Supp.2d at 848-49. The Court in *Williams v. XE Services, LLC* explained as follows:

> At the conditional certification stage, a named plaintiff must raise a "similar legal issue as to coverage, exemption, or nonpayment o[f] ... overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions, but <u>their situations need not be identical</u>." Indeed, "[d]ifferences as to time actually worked, wages actually due, and hours involved are, of course, not significant to this determination."

2011 WL 52353, at *3 (E.D.N.C. Jan. 4, 2011) (emphasis added); *see also, Romero*, 2011 WL 2358606 at *2 (same). "Since the 'similarly situated' standard is a liberal one, it 'typically

results in conditional certification of a representative class.'" *Jirak*, 566 F.Supp.2d at 848-49 (citing *Cameron-Grant*, 347 F.3d at 1243 n. 2).

At the first step, "[a] named plaintiff can show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs <u>together were victims of a common policy or plan</u> that violated the law." *Flores v. Lifeway Foods, Inc.*, 289 F.Supp.2d 1042, 1045 (N.D. Ill. 2003) (emphasis added) (citing *Taillon v. Kohler Rental Power, Inc.*, 2003 WL 2006593, at *1 (N.D. Ill. Apr.29, 2003)) (internal quotation marks omitted); *see also Williams*, 2011 WL 52353, at *4-5 (conditionally certifying employee class who were victims of the defendant's misclassification of them as exempt); *Romero,* 2011 WL 2358606 at *2 (The standard for conditional certification is fairly lenient and requires " 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.' "). The "modest factual showing" requirement of the first step "is not a stringent standard; a plaintiff need only demonstrate a factual nexus that binds potential members of a collective action together." *Patton v. Thomson Corp.*, 364 F.Supp.2d 263, 267 (E.D.N.Y 2005).

   3. <u>Arguments Regarding Individualized Employment Settings, Exemptions, Or The Merits of Plaintiffs' Allegations Are Misplaced At This First Stage</u>.

It is not until the second step—or the decertification stage—that the court evaluates factors such as: (1) disparate factual and employment settings of individual plaintiffs; (2) the various defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Howard*, 2009 WL 140126 at *2 (citing with approval factors from *Thiessen*, 267 F.3d at 1102-03). A 'modest factual showing' is all that is needed for a court to order notice to putative collective action plaintiffs. It is not until the second step of the two stage approach, after discovery is complete, that the court considers whether the

class should be restricted based on the 'similarly situated' requirement. *Flores*, 289 F.Supp.2d at 1045; *Gambo v. Lucent Technologies, Inc.*, 2005 WL 3542485, at *4 (N.D. Ill. Dec. 22, 2005) (the possibility a fact-intensive inquiry may be required to determine whether all members of the opt-in class are similarly situated does not preclude sending notice).

Likewise, at the notice stage, this Court should not consider arguments regarding the merits of, and evidence purporting to controvert, plaintiff's allegations. *Howard*, 2009 WL 140126 at *8, (citing *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (noting that the proper focus of the conditional certification inquiry "is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated")); *see also Olmsted v. Residential Plus Mortgage Corp.*, 2008 WL 5157973, at *3 (N.D.Ill. Dec. 9, 2008) ("At this early stage in the litigation, the Court expresses no views as to the merits of Plaintiff's individual claims or the viability of the collective action.").

Rather, "[w]here the plaintiffs have made a minimal showing that they are similarly situated to other employees who are subject to a common policy or plan that may violate the FLSA, the putative class has a right to know of the lawsuit so that they can consider whether it is in their interests to join." *Howard*, 2009 WL 140126 at *9 (citing *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

Similarly, in loan officer cases like here, courts have routinely held that exemption issues defendants raise at this first stage are improper and are not resolved until the second stage of the certification analysis. *See, e.g., Kelly et al v. Bank of America et al,* 10-cv-5332, p. 3 (N.D.Ill. Aug. 30, 2011)(rebuffing defendant's outside sales exemption and "other exemptions" arguments as "premature")(Attached as Exhibit 9); *McCauley v. First Option Mortg., LLC*, 2010 WL

3522316, at *3 (E.D.Mo. Sept. 2, 2010)(retail sales and administrative exemptions); *Rottman v.Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 992 (N.D.Ill. Aug. 25, 2010)(outside sales exemption). As such, this Court should reject any AHKI argument that opposes conditional certification based upon an exemption defense.

Here, Plaintiffs come forward with substantial allegations in their First Amended Complaint which they support with declarations from themselves and other Loan Officers from different states, and AHKI's own written Loan Originator Module which confirms AHKI pays all Loan Officers on the same commission only basis, and they perform the same job duties and are subject to the same policies and procedures. Together, these easily meet the required lenient standard that AHKI's current and former Loan Officers are similarly situated such that this Court should conditionally certify the class.

**B.    Plaintiffs Have Established the Required "Minimal Showing" that Loan Officers "Similarly Situated" and Were the Victims of AHKI's Illegal Policy that Designated Them as Exempt.**

This Court should grant conditional FLSA certification because Plaintiffs meet their lenient burden to show that AHKI Loan Officers nationwide are similarly situated. Plaintiffs' sworn statements and AHKI's own internal documents demonstrate that Loan Officers nationwide were classified as exempt, paid under the same commission only compensation plan which did not pay minimum wage or overtime, performed the same job duties, were subject to the same policies and procedures, and routinely worked in excess of 40 hours per week and were not paid overtime. For these reasons, this Court should grant conditional certification under FLSA § 216(b) regarding all Loan Officers AHKI classified as exempt from three years prior to the date of issuance of notice and continuing to the present.

First, there is no question that AHKI uniformly classified its Loan Officers as exempt. AHKI former Loan Officers testify so and its own Loan Officer Module document establishes this. Plaintiffs here meet conditional certification based upon misclassification by simply demonstrating that all class members are treated as exempt and perform essentially the same job functions. *See, e.g., Jirak,* 566 F.Supp.2d 847-50.

Second, the uniform job duties of AHKI's Loan Officers warrant conditional certification. As the Plaintiffs' declarations and AHKI's Loan Office Module confirm, regardless of which state or office they worked out of, Loan Officers' primary duty is to sell loans. Specifically, Loan Officers spent their time collecting standard information required to complete a loan application, submitting the loan for approval, and getting the required information and documents for the closing of the loan.

Third, AHKI compensated its Loan Officers in the same way. AHKI paid its Loan Officers on a commission-only basis. Thus, AHKI Loan Officers sometimes worked entire pay periods without any compensation at all.

Finally, AHKI's Loan Officers uniformly worked over 40 hours in a workweek without receiving overtime pay. Likewise, as a result of AHKI's commission-only pay structure, Loan Officers did not always receive minimum wage in exchange for their work.

There is no question that this Court should conditionally certify this case given AHKI's uniform classification of its Loan officers as exempt from overtime and minimum wage compensation, as well as Plaintiffs' common job duties, pay, and performance of unpaid overtime work. Indeed, courts across the United States have conditionally certified numerous classes of loan officers like this one. *See, e.g.,* Ex. 9*, Kelly et al v. Bank of America et al,* 10-cv-5332 (N.D.Ill. Aug. 30, 2011)(conditionally certified nationwide class of BOA mortgage loan

officers); *Lewis v. The Huntington Nat'l Bank*, 2011 WL 1990567, at *3 (S.D. Ohio May 23, 2011) (loan officers); *Vaughan v. Mortgage Source LLC*, 2010 WL 1528521, at *4-8 (E.D.N.Y. Apr. 14, 2010) (loan officers); *Rottman,* 2010 WL 3386007 at *5 (loan officers); *Robinson v. Empire Equity Group, Inc.*, 2009 WL 4018560, at *3-4 (D. Md. Nov. 18, 2009)(loan officers); *Garcia v. Freedom Mortg. Corp.*, 2009 WL 3754070, at*3-6 (D.N.J. Nov. 2, 2009)(loan officers); *McCaffrey v. Mortgage Sources, Corp.*, 2009 WL 2778085, at *3-5 (D.Kan. Aug. 27, 2009)(loan officers); *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209, 213-16 (E.D.N.Y. 2009)(loan officers); *Misra v. Decision One Mortg. Co., LLC*, 673 F. Supp. 2d 987, 995-98 (C.D. Cal.2008)(account executives); *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330,1335-36 (M.D.Fla. 2007)(loan officers); *Stanfield v. First NLC Fin. Servs., LLC*, 2006 WL3190527, at *3-4 (N.D.Cal. Nov. 1, 2006)(loan officers); *Davis v. NovaStar Mortg., Inc.*, 408 F.Supp.2d 811, 815-18 (W.D.Mo. 2005) (loan originators). *Perry v. National City Mortg., Inc.,* No. 05-cv-891-DRH, 2007 WL 1810472, at *3-4 (S.D.Ill. June 21, 2007)(loan originators); *Gieseke v. First Horizon Home Loan Corp.,* 408 F.Supp.2d 1164 (D.Kan.2006) (loan originators).

Based upon the above, this Court should conditionally certify a class of Loan Offices who AHKI classified as exempt and worked at AHKI from three years prior to the date of issuance of notice forward.

**C.  The Court Should Approve the Proposed Notice to the Class Members.**

This Court has the discretion to facilitate notice to potential class members by authorizing judicial notice of a collective action. *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989). As the Supreme Court recognized in *Hoffman-LaRoche*, the goal of judicial economy weighs heavily in favor of certification and the issuance

of notice to potential class members. 493 U.S. at 170. Collective actions benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact." *Id.* "The benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action." *Id.*

A notice to prospective class members "represents not an official communication from the Court, but is instead a communication from the plaintiff and plaintiffs' counsel to other prospective class members." *King v. ITT Continental Baking Co.*, 1986 WL 2628, at *3 (N.D. Ill. Feb. 18, 1986). "'The Court has both the power and duty to ensure fair and accurate notice, [but] that power should not be used to alter plaintiffs' proposed notice unless such alternation is necessary.'" *Heitmann v. City of Chicago*, 2004 WL 1718420, at *3 (N.D. Ill. July 30, 2004) (quoting *King*, 1986 WL 2628, at *3).

Accordingly, Plaintiffs request this Court order the notice and consent form attached as Exhibits 7-8 to issue via (1) first class mail, (2) email, (3) a website at which class members can submit a consent form, and (4) AHKI conspicuously posting the notice at each of its locations until the opt-in period closes. *See, e.g., Nobles v. State Farm Mut. Auto. Ins. Co.*, 2:10-CV-04175-NKL, 2011 WL 3794021, *10 (W.D.Mo. Aug. 25, 2011)(notice ordered disseminated by mail, e-mail, web, and posting the notice in the break rooms); *Garcia*, *supra*, 2008 WL 818532, at *5 (ordered notice to be posted at all of defendant's business locations.); *see also*, *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. April 19, 2006) (Ordering notice to be posted at each of defendant's business locations, noting that defendant would face "only a small burden in being required to post the notice", and that "multiple district courts have approved this method of notice").

To facilitate notice, Plaintiffs request that this Court order AHKI produce a class list which includes names, last known addresses, dates of employment, job title, office location, phone numbers, social security numbers, and email addresses in an agreeable format for mailing. *See, e.g., Nobles v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 3794021, 10 (W.D. Mo. August 25, 2011) (ordering production of class list including "all potential class members including their names, addresses, dates of employment, job title, operations center location, phone numbers, last four social security number digits, and e-mail addresses"); *Edwards v. Multiband Corp.,* 2011 WL 117232, *5 (D. Minn. January 13, 2001) (requiring class list to include name, address, telephone number, dates of employment, location of employment, last four digits of their social security number and date of birth and shall be in electronic and importable format).

Finally, Plaintiffs request a 90 day period after the mailing of notice to opt into this case which is an accepted timeframe. *See, e.g., Williams, LLC*, 2011 WL 52353 at *4-*5 (approved 90 day opt in period).

## CONCLUSION

Plaintiffs respectfully request that this Court grant all relief sought in their Motion.

Dated: September 29, 2011            Respectfully Submitted,

**MALONEY LAW & ASSOCIATES, PLLC**

*/s/ Tamara L. Huckert*
Margaret Behringer Maloney, N.C. Bar No. 13253
Tamara L. Huckert, N.C. Bar No. 35348
1824 East 7th Street
Charlotte, NC 28204
mmaloney@maloneylegal.com
thuckert@maloneylegal.com
Telephone: 704-632-1622
Facsimile: 704-632-1623
*Local Counsel for Plaintiffs*

**ROWDY MEEKS LEGAL GROUP LLC**

*/s/ Rowdy B. Meeks*_____
Rowdy B. Meeks
435 Nichols Rd., Suite 200
Kansas City, Missouri 64112
Rowdy.Meeks@rmlegalgroup.com
Telephone:  816-977-2740
Facsimile:  816-875-5069
*Admitted Pro Hac Vice*

ATTORNEYS FOR PLAINTIFFS


## **CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2011, I electronically filed the foregoing using the Court's CM/ECF system which will send notification of such filing to counsel of record.

/s/ Rowdy B. Meeks_____
Rowdy B. Meeks, Attorney for Plaintiffs